UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALEXANDER HAGGART                         )
                                          )
        Plaintiff,                        )            Case No.
                                          )            Hon.
v.                                        )
                                          )
ROBERT SHINSKE                                )
                                          )
        Defendant.                        )
_____/

## COMPLAINT

### Parties

1.      Plaintiff ALEXANDER HAGGART is a resident of the City of St. Clair

Shores, Macomb County Michigan.

2.      Defendant ROBERT SHINSKE, at all relevant times mentioned herein,

is/was a Deputy Fire Chief for the DPD and third in command of the department.

### Jurisdiction

3.      This action arises under Title 42 of the United States Code, Section 1983.

Title 28 of the United States Code, Sections 1331 and 1342 confers jurisdiction on this

court. The unlawful acts and practices alleged in this Complaint occurred in Detroit,

Michigan and St. Clair Shores, Michigan. Both cities are within this judicial district. Title

28 of the United States code, Section 1391(b) confers venue on this Court.

### General Allegations

4.      Plaintiff freelances as a "stringer." A stringer monitors emergency radio

bands and responds to accident, crime, and/or fire scenes with the intent of

photographing or filming the events for publication or later sale to media outlets.

1

5.      Prior to the events giving rise to the present lawsuit, Plaintiff primarily focused his freelance activities on fires occurring within the City of Detroit.

6.      As a stringer, Plaintiff would park his vehicle in areas of the City known to him as "hot spots." Hot spots are areas that have recently seen an increase in arson.

7.      Because of his activities, Plaintiff was well known to the Detroit Fire Department (hereinafter referred to as "DFD"). Prior to the events giving rise to the present lawsuit, Plaintiff had met with various supervisors and executives within the DFD regarding his activities.

8.      Prior to the events giving rise to the present lawsuit, Plaintiff had not been prohibited or subject to legal action by anyone within the City of Detroit regarding his activities as a stringer.

9.      Concurrent with his activities as a stringer, Plaintiff maintained a Facebook page entitled "Southeast Michigan Fire and Weather." The page would post footage from fires as well as other items deemed to be newsworthy by Plaintiff. Plaintiff would also stream certain events live over the internet using the application/website Periscope.

10.      On or about the evening of October 13, 2017 and into the morning of October 14, 2017, while Plaintiff was freelancing as a stringer with other individuals, he observed someone attempt to set fire to a vacant building. At the time, Plaintiff was riding in his vehicle around an area he believed to be a hot spot on the City's east side.

11.      Plaintiff attempted to contact authorities through both 911 and a direct line he had to the DFD arson investigation unit. Plaintiff also began taking video of the encounter. This video was broadcast live over the internet.

12.     Detroit Police Department, (hereinafter referred to as "DPD") failed to respond to the scene, so Plaintiff, along with an acquaintance, followed the individual. Plaintiff continued to video the encounter.

13.     Eventually, Plaintiff and his acquaintance came across Detroit Police Department officers in a marked patrol car. They flagged down the officers who detained, but did not arrest, the suspected arsonist. Plaintiff was not detained or arrested. Plaintiff offered to show the officers the video he had recorded and broadcast, but the officers declined to view it.

14.     Sometime in October 2017, after the incident with the suspected arsonist, Plaintiff received a communication via text message with a photograph. The communication indicated that an on-duty DPD employee's city-owned official vehicle was spotted in the parking lot of a Dearborn, Michigan bar. The photograph showed the vehicle in the bar's parking lot.

15.     At the time, the City of Detroit had a policy that Detroit-owned vehicles were to be used solely for assigned work duties and were not to be taken home unless explicitly approved by department management. Under no circumstances were city-owned vehicles to be used for personal business.

16.     Plaintiff did not take the photograph. He did, however, post the photograph to the "Southeast Michigan Fire and Weather" Facebook page on or about October 16, 2017. The post identified Defendant Shinske as the official responsible for the vehicle. Plaintiff deleted the post on October 17, 2017.

17.     Despite deleting it, within two days of Plaintiff's initial post, the photograph was picked up by local media outlets including the Detroit Free Press and Fox 2:

Detroit. These local media outlets sought comment from the DFD regarding the incident.

18.     Defendant Shinske was subsequently suspended for five days as a result of his improper use of a city-owned vehicle.

19.     After Plaintiff published the photograph, Defendant Shinske instructed a co-worker, now a defendant in the preceding litigation arising out of the same actions, to investigate Plaintiff regarding the October 13-14 incident involving the suspected arsonist.

20.     Defendant Shinske's sole motivation for instructing his co-worker to investigate Plaintiff was to retaliate for the October 16, 2017 post showing Defendant Shinske's city-owned vehicle at a Dearborn bar.

21.     Defendant Shinske had no probable cause to believe a crime had been committed when he instructed DFD and/or DPD employees to investigate Plaintiff.

22.     Ultimately an "Affidavit for Search Warrant" was generated and signed by Detroit Police Department officer Theopolis Williams. The affidavit resulted in the issuance of a Search Warrant by a judge for Michigan's 3rd Judicial Circuit Court.

23.     Plaintiff's acquaintance, who was with him at the time of the October 13/October 14 arson incident, was not investigated by the DPD or DFD even though the acquaintance had engaged in the same activity as Plaintiff.

24.     The "Affidavit for Search Warrant" sought "computers and its peripherals, cell phones and PDA's and their battery chargers, digital and film cameras, photographs, digital and film video cameras, that may be utilized in connection with the above described activiites, including all firearms, ammunition, contraband, and any item

or items germane to the felonious assault and carrying a concealed weapon."

25.     On the same day, a felony warrant was issued for the arrest of the individual Plaintiff observed trying to set a building fire on October 13, 2017.

26.     On October 24, 2017, City of Grosse Pointe Farms police, at the instruction of currently unknown individuals within the DPD and/or DFD, conducted a traffic stop on Plaintiff. Plaintiff was detained and the DPD and/or DFD raided his home.

27.     While raiding Plaintiff's home, the DPD and/or DFD confiscated several items including cell phones, drones, computers, and electronic tablets. Plaintiff's vehicle was also impounded. Plaintiff was not arrested at the time of the raid.

28.     During the traffic stop, Grosse Pointe Farms police found a handgun in Plaintiff's vehicle. At the time, Plaintiff's Michigan concealed carry permit had lapsed.

29.     On or about October 29, 2017, Plaintiff was filming another fire in the City of Detroit when he was surrounded by DPD officers and arrested. The arrest was based on a warrant issued by Grosse Pointe Farms for the handgun found in Plaintiff's vehicle. Plaintiff was subsequently turned over to Grosse Pointe police by the DPD.

30.     Only after October 29, 2017 should the Plaintiff have reasonably realized that he had this cause of action against the Defendant, who thereafter and to this day has continued his campaign of harassment and retaliation against the Plaintiff.

31.     Prosecutors for the City of Detroit never filed any charges against Plaintiff resulting from the October 13-14 incident involving the suspected arsonist.

32.     Based on information and belief, Defendant Shinkse exceeded the scope of the search warrant as, once Plaintiff's electronic devices were in the DPD's possession, Defendant Shinke and/or City of Detroit employees acting on Defendant

Shinke's direction sought to identify the individual who provided the photograph of Defendant Shinske's vehicle to Plaintiff.

33.     Based on information and belief, Defendant Shinske accessed Plaintiff's electronic devices while they were in the custody of the DPD. Defendant Shinske accessed this information for purposes unrelated to any criminal investigation and solely in an effort to gain information that he deemed damaging to Plaintiff.

34.     Despite not pressing charges and despite the evidence not being used for purposes of the Grosse Pointe Farms prosecution, Plaintiff's possessions were not returned to him for several months. When they were returned items were damaged. Other items that were confiscated in the October 24, 2017 raid were not returned at all.

35.     Defendant's sole motivation in investigating Plaintiff was to retaliate against him for publishing the photograph of Defendant Shinske's vehicle.

36.     Since that time, Defendant has continued to harass Plaintiff. This harassment has included barring Plaintiff from entering any DFD firehouse, instructing DFD and/or DPD employees to conduct surveillance on Plaintiff for no purpose, causing Plaintiff to be detained for no reasons while on the scene of a fire, and filing a meritless petition for a restraining order against Plaintiff.

37.     At all relevant times, the Defendant Shinske acted under the color of state law.

38.     Defendant Shinske acted as a policymaker for Defendant City of Detroit.

39.     Plaintiff's act of posting the photograph of Defendant Shinske's vehicle constitutes speech protected by the First Amendment of the United States Constitution.

40.     The actions of the Defendant was intentional and with deliberate

indifference and recklessness to the rights of Plaintiff. Further, the actions of the Defendant were not intended or designed in any way to benefit the citizens of the City of Detroit and were malicious and corrupt, supporting an award of punitive damages against the Defendant.

### Count I - Violation of 42 USC § 1983

41.     Plaintiff incorporates all prior allegations as set forth herein.

42.     No reasonable public official would have believed that the acts undertaken by the Defendant were appropriate under the facts of this case.

43.     Defendant Shinske's position in the DFD as well as the pervasive and constant harassment initiated by him against Plaintiff and involving various employees of the DFD and DPD evidences that the DPD and/or DFD harassment of Plaintiff amounted to an official policy of the City of Detroit.

44.     Acting under color of law, the Defendant violated Plaintiff's federal and state constitutional rights to exercise free speech, to be free from unlawful assault by DFD or DPD employees, to be free from a malicious criminal prosecution, to not be falsely arrested, to be free from unreasonable search and seizure, and to equal protection of the law.

45.     Defendant's actions violated 42 USC § 1983.

46.     As a result of Defendant's conduct, Plaintiff suffered damages including pain and suffering, mental distress, property damage, damage to reputation, shock, humiliation, attorney fees and loss of freedom.

### Count II - Violation of 42 USC § 1985

47.     Plaintiff incorporates all prior allegations as set forth herein.

48.     Defendant conspired with others in the Detroit Fire Department to deprive Plaintiff of the due course of justice with intent to deny him equal protection of the law and to injure him for exercising his constitutionally protected right to free speech.

49.     Defendant's actions violated 42 USC § 1985.

50.     As a result of Defendant's conduct, Plaintiff suffered damages including pain and suffering, mental distress, property damage, damage to reputation, shock, humiliation, attorney fees and loss of freedom.

WHEREFORE Plaintiff prays for damages in a sum to be determined at trial, including all compensatory and punitive damages allowed by law, as well as all costs and attorney fees allowed by law.

Respectfully Submitted,
RAVID & ASSOCIATES P.C.

/s/ Stephen N. Leuchtman

By: Stephen N. Leuchtman        P16590
Attorneys for Plaintiff
23855 Northwestern Highway
Southfield, Michigan 48075
(248) 948-9696 / (248) 948-5055 fax
s-leuchtman@michiganpersonalinjury.com

Dated: February 3, 2021